## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 4:19-cr-00485-1-CDP-NCC |
| MICAH GORDON, | ) ) ) |
| Defendant. | ) ) |

## MOTION TO SUPPRESS EVIDENCE

Comes now defendant, MICAH GORDON, through counsel, Stephen C. Williams, and moves this Court to suppress evidence seized from Defendant during his arrest on April 23, 2019, as well as statements made by the Defendant during and shortly after his arrest.  In support thereof, Defendant states:

## FACTS

On April 23, 2019, Mr. Gordon was arrested by officers of the St. Louis Metropolitan Police Department (SLMPD) as well as unknown federal agents.  The agents were attempting to execute a federal arrest warrant for Kevin Cunningham. Instead, they arrested Mr. Gordon.

On April 22nd, 2019, a federal arrest warrant was issued for Kevin Cunningham on a complaint filed in the Eastern District of Missouri, case number 19-341-AGF (originally 19-MJ-5156-NAB) charging Mr. Cunningham with felon in possession of a firearm.  *See* 19-341, EDMO, doc. 1 and minute entries from 4/22/2019.  On the morning of April 23rd, unknown federal officers, as well as officers from the St. Louis Police Department began surveillance of Mr. Cunningham's residence at **[REDACTED]**, St. Louis Missouri, for the purpose of arresting Mr. Cunningham on the federal warrant and a state wanted for an assault. (Ex. 1 at p.7).  Officers Gushner Walker and Benjamin Eilerman  of the SLMPD were assigned to assist in the arrest of Mr. Cunningham.

Detectives conducting the surveillance of Cunningham's residence informed Officers Gushner and Walker that Mr. Cunningham (identified in the report as Kevin C.) was expected to leave his residence at **[REDACTED]** and drive his white full-size truck to his business at 5654 Delmar (Her.Man's Barber & Salon). (Ex. 1 at 7). Officer Walker knew both Mr. Cunningham and the Defendant, Mr. Gordon, from high school. In fact, Officer Walker had been on the same wrestling team with the Mr. Gordon in high school. While monitoring the radio, Officers Walker and Eilerman were informed by the detectives that a man "matching [Cunningham's] description, wearing all black clothing with a white hat and a 'brown man bag' exited the targeted residence and retrieved a bag from the targeted vehicle."[1] (Ex. 1 at 7) This man turned out to be Defendant, Micah Gordon. Although Mr. Gordon was wearing all black and was carrying a brown man bag, he does not match any reasonable description of Mr. Cunningham other than they are both African American men. This is evident from comparing their two pictures. (Ex. 2 (photograph of Mr. Gordon) & 3 (photographs of Mr. Cunningham). Mr. Gordon is 6' 2'' tall. (Ex. 4). Mr. Cunningham is 5' 9'' tall. (Ex. 5). And although they are of similar weight, their body types are very different given their difference in height.

Shortly after being advised of a subject leaving the building "matching" Mr. Cunningham's description, officers Walker and Eilerman were told over the radio that the "subject entered a gray BMW, being operated by a female driver. (Ex. 1 at 7). The BMW drove east on Ashby and North on Euclid. Detectives and agents followed the BMW to the area of North Broadway and I-70 where the BMW entered a Phillips 66 parking lot." (Ex.1 at 7). Again, this was Mr. Gordon travelling as a

---

[1] The defense does not know the extent to which the SLMPD offices and federal agents obtained a description and/or photograph of Mr. Cunningham in order to ensure they arrested the right person. The defense requested this information from the government and the request was refused on the grounds that the government would not reveal information concerning an investigation of another person. However, the defense's position is that the government cannot establish that its' "mistaken identity" arrest of Mr. Gordon was reasonable without demonstrating at a minimum that, based on the information reasonably available to the government agents, the conclusion that Mr. Gordon "matched" the description of Mr. Cunningham was a reasonable one.

passenger in the BMW instead of the Pickup truck that Mr. Cunningham was expected to be driving.  In addition, Mr. Gordon travelled to the Phillips 66 station for 2.7 miles in an east-southeasterly direction (Ex. 6), nowhere near Mr. Cunningham's expected destination of 5654 Delmar located almost five miles to the southwest. (Ex. 7).

When the BMW arrived at the Phillips 66 station, Mr. Gordon got out and went across the street to a BP gas station and entered the convenience store.  Officers Walker and Eilerman, along with other SLMPD officers proceeded to the BP in order to arrest the "subject" who the believed to be Mr. Cunningham.  When Mr. Gordon exited the BP convenience store, the officers converged on him and arrested him. (Ex.1 at 7).

Officer Walker knew Mr. Gordon and recognized him.  In fact, Officer Walker and Mr. Gordon had known one another for quite some time as they had wrestled in high school.  Nevertheless, despite knowing that Mr. Cunningham was the subject of the arrest warrant they were supposed to be executing, and knowing Mr. Gordon was clearly not him, Officer Walker put Mr. Gordon in handcuffs and conducted a search of his person.  The police report even confirms that officer Walker knew Mr. Gordon, it just does so after reporting on the circumstances of the arrest. (Ex. 1 at 8).  The search revealed the firearm that is the subject of this Indictment and controlled substances.  Shortly after his arrest, Mr. Gordon also made inculpatory statements concerning his possession of the firearm and controlled substances.

**ARGUMENT**

Although Mr. Gordon was arrested in part based on a valid warrant for the arrest of Kevin Cunningham, his arrest and detention violated the Fourth Amendment to the Constitution.  First, the law enforcement officers' conclusion that Mr. Gordon "matched" the description of Mr. Cunningham was an unreasonable one.  Mr. Gordon and Mr. Cunningham look nothing alike and have very different body types.  The only physical characteristic they have in common is skin color.

Moreover, it is not clear that the police had any reasonable basis upon which to conclude that they were a "match."

Second, the conclusion that Mr. Gordon was not, in fact, Mr. Cunningham, was reinforced when he got into the passenger side of a different vehicle than was expected and headed in a completely different direction than his workplace.  Finally, Mr. Gordon was arrested by an officer who knew him, had known him along time, and knew that they were supposed to be arresting Mr. Cunningham on a warrant.  Thus, by the time he was arrested, Mr. Gordon could not even be said to have been the subject of a mistaken identification, unreasonable as it was.  The arresting officer – Officer Gushner - knew he was arresting the wrong person and did it anyway.

In situations such as the  unusual circumstances presented in this case, where police assert that an arrest is a case of mistaken identity, the Supreme Court has set forth special rules concerning the validity of an arrest.  Where "the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."  *Hill v. California,* 401 U.S. 797, 802 (1971); s*ee also Hill v. Scott,* 349 F.3d 1068, 1072 – 73 (8th Cir. 2003); *United States v. Patrick,* 776 F.3d 951, 955 – 56 (8th Cir. 2015); *United States v. Bobo,* 994 F.2d 524, 527 (8th Cir. 1993).

Here, the defense does not contest the validity of the warrant issued for Mr. Cunningham on probable cause.  Accordingly, if the officers involved in Mr. Gordon's arrest reasonably mistook him for Mr. Cunningham, then the arrest of Mr. Gordon was valid.  The search of his person incident to that arrest would also be valid, as would his subsequent detention. In which case, the defense would have no basis to request the suppression of the evidence found on his person or his spontaneous statements made shortly thereafter. On the other, hand, if this is a case of unreasonable mistaken identity, then the arrest is unlawful and there would be no basis for the subsequent search.  Under which circumstances, the tangible evidence seized from Mr. Gordon should be suppressed.

*Murray v. United States,* 487 U.S. 533, 536 (1988)**.**  Additionally, because Mr. Gordons statements were directly derived from his arrest, if the arrest is not valid his statements should be suppressed as the fruit of the poisonous tree. *Murray,* 487 U.S. at 537; *Wong Sun v. United States,* 371 U.S. 471 484 (1963).

Although arrests made upon a reasonable case of mistaken identity are valid, this is not such a case.  Here, what started out as a case of an unreasonable mistake evolved into an arrest of someone known by the arresting officer to not be the person for whom the warrant was issued.  Not surprisingly, the defense cannot find a case which mirrors these facts.

Mr. Gordon bears no resemblance to Mr. Cunningham.  As far as the defense is aware, the only "match" was that an African American man was observed leaving Mr. Cunningham's residence.  This alone, cannot be enough. Mr. Gordon acknowledges that a perfect match in descriptive characteristics is not required for an arrest on a warrant to be deemed reasonable under the totality of the circumstances.  *See Hill v. Scott,* 349 F.3d at 1073 (and cases cited therein). However, given the relevance of the "matching" description relied upon by law enforcement which led to the arrest in this case, it is incumbent on the government to provide the details upon which its agents relied.

Mr. Gordon also did not leave in Mr. Cunningham's residence in Mr. Cunningham's truck as expected.  Nor did he travel to Mr. Cunningham's workplace as expected.  At this point, alarm bells were should have been sounding. The strong doubts that should have been manifest as a result of the lack of similarity between the "subject" (Mr. Gordon) and the target (Mr. Cunningham) should have only heightened upon making these observations.

Finally, and most importantly, upon seeing that Mr. Gordon, a longtime acquaintance, was the "subject" that had been followed from Mr. Cunningham's residence, it was manifestly apparent to the arresting officer that they had the wrong guy.  No arrest or detention of any kind was

necessary.  At that point, this matter evolved from a case of mistaken identity to one of certainty.  The arresting officer knew that had the wrong man.  It was time to reset and arrest the right person.

WHEREFORE, the Defendant, Micah Gordon, prays that this Court GRANT his Motion and suppress the physical evidence seized from his person during his arrest on 4/23/109 as well as the statements he made to law enforcement shortly after his arrest.

Respectfully submitted,

/STEPHEN C. WILLIAMS
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL   62220
Telephone: (618) 277-7260
Fax: (618) 277-7718
swilliams@kuehnlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2019, I electronically filed this Motion to Suppress with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/STEPHEN C. WILLIAMS
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL   62220
Telephone: (618) 277-7260
Fax: (618) 277-7718
Swilliams@kuehnlawfirm.com